IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEBORAH GIBSON,

      Plaintiff,                          No. CIV S-04-1776 GGH

    vs.

JO ANNE B. BARNHART,           ORDER
Commissioner of
Social Security,

      Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1] For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is GRANTED IN PART, the Commissioner's Cross Motion for Summary Judgment is DENIED, and the Clerk is directed to enter judgment for the plaintiff.

BACKGROUND

        Plaintiff, born April 8, 1956, applied on January 8, 2002 for disability insurance benefits. (Tr. at 39.) Plaintiff alleged she was unable to work since September 5, 2000, due to arthritis, fibromyalgia and diabetes. (Tr. at 39, 13.)

---

[1] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed before a magistrate judge).

In a decision dated April 6, 2004, ALJ Antonio Acevedo-Torres determined plaintiff was not disabled. The ALJ made the following findings:[2]

>   1. The claimant met the disability insured status requirements of the Act on September 5, 2000, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.
>
>   2. The claimant has not engaged in substantial gainful activity since September 5, 2000.
>
>   3. The medical evidence establishes that the claimant has "severe" impairments; bilateral knee osteoarthritis, fibromyalgia, diabetes and obesity. However, while the claimant has severe, [sic] but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

\\\\\

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

>   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>   Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

| | | |
|---|---|---|
| | 4. | The claimant's allegation of an inability to perform all work secondary to pain and other symptoms is found to be not credible as stated above. |
| | 5. | The claimant has the following residual functional capacity; Specifically, the claimant is limited to standing and walking for 2 hours total in an 8 hour workday with frequent breaks. She is able to sit for up to 6 hours regular breaks. [Sic] She is able to lift 20 pounds occasionally, 10 pounds frequently. Bending, stooping and crouching are limited to occasional. There are no nonexertional limitations (20 CFR § 404.1545). |
| | 6. | The claimant is unable to perform her past relevant work as a childcare provider as she provided it or as it is regularly provided in the national economy. |
| | 7. | The claimant's residual functional capacity for the full range of light work is reduced by a restriction to standing and walking no more than 2 hours total with frequent breaks. |
| | 8. | The claimant is 48 years old, which is defined as a younger individual (20 CFR § 404.1563). |
| | 9. | The claimant 11th grade education [Sic] (20 CFR § 404.1564). |
| | 10. | The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR § 404.1568). |
| | 11. | If the claimant had the capacity to perform the full range of light work, Section 404.1569 of Regulation No. 4 and Rules 202.19, 201.18 and 210.20, Table No. 1 of Appendix 2, Subpart P, Regulation No. 4 would direct a conclusion that she is not disabled. If the range of sedentary work were significantly compromised, section 201.00(h) of Appendix 2 indicates that a finding of disabled would be appropriate. |
| | 12. | The claimant's capacity for less than a full range of light work and a wide range of sedentary work has not been compromised by her exertional limitations. Accordingly, using the above-cited rule(s) as a framework for decisionmaking, the claimant is not disabled. |
| | 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)). |

(Tr. at 18-19.)

3

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Review Fully and Fairly the Substantial Evidence of Record; B. Whether the ALJ Provided Due Process to Plaintiff; and C. Whether the ALJ Fully and Fairly Reviewed the Testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A. Whether the ALJ Erred in Failing to Consider Obesity in Combination with Plaintiff's Other Impairments

Plaintiff contends that the ALJ should have considered whether her obesity met or equaled the listings, specifically listing 1.02, due to her bilateral patellofemoral arthritis, chondromalacia, and diabetes, which has resulted in right hand weakness, along with fibromyalgia, and asthma.

The "Listing of Impairments" ("Listings") describe various impairments of thirteen bodily systems, which presumptively preclude a person from working. 20 C.F.R. Pt.

4

404, Subpt. P, App. 1. See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing. A mere *diagnosis* of a listed impairment is not sufficient. Specific findings included in each listing also must be met. See, e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. Young, 911 F.2d at 183.

In the recent Ninth Circuit case, Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), consideration of plaintiff's obesity at step three was analyzed in light of Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003). The Celaya factors are whether, despite plaintiff's failure to specifically raise obesity, it was raised as a disabling factor in plaintiff's report of symptoms, whether it was clear from the record that the obesity was close to the listing criterion, and could exacerbate the other alleged impairments, and whether the ALJ should have been on notice of the need to develop the record on obesity due to plaintiff's pro se status, in light of his observation of plaintiff and other information in the record. Id. at 1182.

At five feet eight inches tall, plaintiff's weight varied between 186 and 294 pounds. (Tr. at 156, 338.) The ALJ found plaintiff's obesity to be severe, along with her bilateral knee osteoarthritis, fibromyalgia, diabetes and obesity, but concluded that she did not meet or equal the listings. He did note that two physicians at Kaiser advised plaintiff to lose weight, (Tr. at 120, 217), and that Dr. Mikol noted plaintiff's symptoms would decrease if she lost weight. (Tr. at 340). Other than these notations, the ALJ did not evaluate plaintiff's obesity or discuss it further.

In addition to the aforementioned records evidencing plaintiff's obesity and the need to lose weight, Dr. Wiggers noted in his July 20, 2003 exam that he could not palpate the

internal organs due to plaintiff's obesity which he submitted as a diagnosis. (Tr. at 156, 158.) Physicians at Kaiser also diagnosed obesity on other occasions. (Tr. at 170.) Dr. DeYoung on October 31, 2003 stated that he spoke with plaintiff at length about weight loss, among other things. (Tr. at 171.) On December 21, 2000, Dr. Jackson at Kaiser emphasized to plaintiff that her knee symptoms would be significantly decreased if she lost weight. (Tr. at 297, 120.) On February 2, 2001, it was reported that plaintiff was physically limited by knee pain and obesity. (Id. at 325.) In a DDS case activities worksheet, it was noted that plaintiff suffered from obesity. (Tr. at 84.)

      Although plaintiff's own filings with the Social Security Administration do not appear to have raised obesity as an impairment,[3] she can not be entirely faulted where she was proceeding pro se at the time. Plaintiff, who now has counsel for this case, points to some of the above referenced cites in the record in arguing for consideration of obesity. Furthermore, plaintiff did not have counsel through the administrative process, and therefore may not have been aware of the need to develop the record in regard to obesity. Based on this information and plaintiff's pro se status, the ALJ should have developed the record.

      In this case, there were at least a few diagnoses of obesity, with urgings by medical professionals to lose weight in order to alleviate her physical symptoms. As explained by Social Security Ruling 02-01p:

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.

---

[3] Plaintiff's counsel cites to (Tr. 39) for an assertion of obesity as one of plaintiff's impairments. The cited reference is in error, and the court cannot locate other allegations of obesity.

6

Furthermore, based on the record evidence of obesity, the ALJ should have considered SSR 02-01p which makes clear that obesity is a disease that must be considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately," the ALJ "will evaluate each case based on the information *in the case record*." (Id.) (emphasis added). Even if it is ultimately determined that listing equivalence is not satisfied, the ALJ must take into account the fact of obesity at the other levels of the sequential analysis.

"An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch, 400 F.3d at 683. In this case, the ALJ was required to evaluate the combined effects of plaintiff's impairments based on the record of obesity presented here, and especially in light of plaintiff's other diagnoses which could be impacted by obesity, including arthritis, fibromyalgia, diabetes, and knee problems. Plaintiff was not represented by counsel throughout the administrative proceedings, which is all the more reason why the ALJ should have developed the record in this regard. Because the issue of obesity was not raised as an explicit issue until the district court proceedings, this case must be remanded for further consideration by the ALJ.

B.  New Evidence

Plaintiff also contends that the case should be remanded for the ALJ to consider new evidence in the form of Kaiser medical records, dated June 4, 2003 through April 16, 2005.

A federal district court should remand a case to the Commissioner to consider material new evidence if good cause exists for its absence from the prior record. 42 U.S.C. § 405(g); Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).

\\\\\

\\\\\

\\\\\

New evidence is "material," if the court finds a reasonable possibility that considering the evidence would have changed the disability determination.[4]  See Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).  Unless it is probative of plaintiff's condition at or before the disability hearing, new evidence is not material.  See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related to a medical condition not significantly at issue at time of hearing).[5]

"Good cause" requires more than "simply . . . obtaining a more favorable report from an expert witness once [a] claim is denied.  The claimant must establish good cause for not seeking the expert's opinion prior to the denial. . . ."  Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990) (citing Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir.1985)).  For example, good cause exists if new evidence earlier was unavailable, in the sense that it could not have been obtained earlier.  Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir.1988).

Plaintiff has not made any argument for good cause, and has not presented the new evidence to which she refers.  Therefore, this argument fails.

C. Due Process

Plaintiff first contends that she was not properly advised of her right to representation in preparation for and attendance at the hearing, or to assist in development of the record.

Plaintiff may assume that a due process property interest is involved in this case because she is an applicant for "earned" social security benefits.  As set forth in the instructive opinion of Flatford v. Chater, 93 F.3d 1296 (6th Cir. 1996) the issue of an "applicant's (as

---

[4] Evidence is not deemed immaterial solely by the date it was created.  Later dated evidence may have substantive impact on a preceding period.

[5] When new evidence reflects plaintiff's current condition but is not probative of a condition at the time of the initial determination, the correct procedure is to reapply for benefits.  See Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir.1982).

opposed to a beneficiary's) right to claim Social Security benefits as a property right subject to constitutional due process has only been impliedly adjudicated.  See also Torres v. Chater, 125 F.3d 166, 169 (3rd Cir. 1997) (finding applicants entitled to procedural due process).  Like the Sixth and Third Circuits, this court will nevertheless assume the existence of an applicant's due process right in the abstract.

In this case, plaintiff was advised on August 5, 2003, approximately six months prior to the hearing, that she could have a representative or attorney help her.  (Tr. at 36.)  On January 9, 2004, plaintiff was again advised of her right to counsel or other representative.  (Id. at 22.)  Once again, at the February 6, 2004 hearing, the ALJ advised plaintiff of her right to counsel at the hearing, and she chose to go ahead with the hearing without counsel.  (Id. at 356.)

Even if there was a serious issue as to whether plaintiff knowing waived her right to counsel at the hearing, the question is whether, without counsel, the ALJ fulfilled his duty "'to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts,' and he must be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'"  Vidal v. Harris, 637 F.2d 710, 714 (9th Cir. 1981), quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  This inquiry coincides with plaintiff's second contention in regard to due process, that the ALJ did not assist her in developing the record.  The court finds that only in regard to considering her obesity did the ALJ fail in his duty.  See discussion Section A supra.  Plaintiff refers to new evidence which she claims the ALJ should have obtained and which she claims are attached to her filing, however, those records have not been submitted to the court and based on the date of the ALJ's decision, at least some of those records were not in existence at the time the ALJ was supposed to have obtained them.  See discussion Section B supra.

### D. Whether the ALJ Properly Assessed Plaintiff's Credibility

Plaintiff asserts that the ALJ did not question her fully at the hearing, and did not properly evaluate her testimony, ignoring and misstating much of it.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[6] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent

---

[6] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In this case, the ALJ addressed the treating records and noted that they indicated only mild wrist, hand and knee pain, and only occasionally. (Tr. at 15.) He also looked at the objective evidence which included multiple normal x-rays of the hand, wrist, feet, elbow, and knee. (Id.) The most recent MRI of record, dated December, 2003, disclosed no evidence of a meniscus tear, but only mild degenerative changes. (Id. at 16.) Although conceding that plaintiff experienced pain due to her impairments, the ALJ nevertheless found the evidence to support her ability to do some work. (Id.) Consistent is the review by Dr. Wiggers, who noted that plaintiff was tearful and uncomfortable on exam due to pain, but she did not call attention to it, leading this physician to believe her discomfort was real. (Tr. at 158.) Despite this observation, Dr. Wiggers thought plaintiff could perform work which involved sitting for six hours, and standing and walking for up to two hours with frequent breaks. She could lift and carry 20 pounds occasionally and ten pounds frequently. (Id.)

The ALJ also discussed plaintiff's daily activities which included driving for as long as ten to fifteen minutes, visiting her children, attending church, and taking her mother to the doctor. The ALJ reported that plaintiff could walk two blocks on a good day, sit for two hours and stand for two hours. He also stated that on bad days she could not walk. (Tr. at 16.) As a result, the ALJ did partially credit her complaints of pain and her fibromyalgia, but concluded that all her impairments in combination did not prevent her from doing all work. (Id. at 17.) He did not state whether he accepted her credibility in regard to her other limitations or pain, however, or if he rejected it in part, why he did so. Such a conclusory determination is not adequate. Furthermore, the record raises questions why plaintiff's credibility should be rejected at all. In addition to Dr. Wiggers' opinion that plaintiff's tearfulness was the result of real pain, Dr. Fountaine, who performed a residual functional capacity assessment for DDS, noted that

11

plaintiff was tearful after her knees were examined, and "appeared to be in discomfort at times, as was grimacing, but did not verbalize this or call attention to herself, during ROM's of hips and shoulders." ... "Examiner felt the discomfort clmt had was real."  (Tr. at 169.)

Plaintiff further claims that the ALJ either failed to elicit important testimony or ignored her limited testimony for the most part.[7]

Disability hearings are not adversarial. <u>Dixon v. Heckler</u>, 811 F.2d 506, 510 (10th Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his decision") (quoting <u>Heckler v. Campbell</u>, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)).  The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144 (9th Cir. 2001).[8]  The duty also is heightened in the case of a mentally ill claimant who may not be able to protect him or herself.  <u>Id.</u>

Evidence raising an issue requiring the ALJ to investigate further depends on the case.  Generally, there must be some objective evidence suggesting a condition which could have a material impact on the disability decision.  See <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir.1996); <u>Wainwright v. Secretary of Health and Human Services</u>, 939 F.2d 680, 682 (9th Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  <u>Tonapetyan</u>, 242 F.3d at 1150 (quoting <u>Smolen</u>, 80 F.3d at 1288.)

The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4)

---

[7] Plaintiff also contends the ALJ misstated her testimony; however, she does not give any examples.

[8] <u>See also</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

12

continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan, 242 F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).  Ordering a consultative examination ordinarily is discretionary, see Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.1991); Jones v. Bowen, 829 F.2d 524, 526 (5th Cir.1987), and is required only when necessary to resolve the disability issue.  See Reeves v. Heckler, 734 F.2d 519, 522 (11th Cir.1984); Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977).

It is true that the ALJ did not mention the factors in SSR 96-7.  That fact alone would not normally be fatal if the evidence of record analyzed and offered in support of the ALJ's credibility finding were sufficient.  Here, however, the ALJ's questioning at hearing was extremely conclusory, and what little information he did obtain from plaintiff, he failed to explain.  For example, plaintiff testified that she takes Vicodin four to six times a day. (Tr. at 359.)  This pain medication is prescribed for moderate to moderately severe pain.  Physicians' Desk Reference 1485 (53rd ed. 1999).  The ALJ failed to explain why such a large dose was necessary in light of her pain, and would permit her to work.  He stated only that her symptoms were improved with this medication.  (Tr. at 16.)

Plaintiff correctly asserts that the ALJ did not question her at hearing about the nature, degree, and areas of plaintiff's symptoms, except in regard to medication.  The hearing transcript indicates the ALJ's questioning was limited to how often plaintiff sees a doctor, her sleeping patterns, her functional abilities such as problems ambulating, standing, sitting, and lifting, and her daily activities.  (Tr. at 358, 359, 360.)  The entire hearing transcript is less than eight pages fully transcribed.  Longer transcripts have been held inadequate.  See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994) (finding ten minute hearing which was fully transcribed in eleven pages was not fully and fairly developed).  A full examination of a claimant should include, among other things, questions about impairments, physical (and mental) limitations, and medical care.  McCormick, Harvey L., Social Security Claims and Procedures § 12:18, p. 24 (5th ed. 1998).  The ALJ here spent almost no time delving into any of plaintiff's impairments, her

13

treatment, dates of treatment, or where treatment was obtained. The only question the ALJ asked about treatment was how often plaintiff saw a doctor:

> Q During the year 2000, how often did you see a doctor for any reason?
>
> A I see my doctor every three months.
>
> Q During the year 2001, too, the same?
>
> A Yes.
>
> Q And 2002?
>
> A Yes.
>
> Q And 2003?
>
> A Yes.

(Tr. at 358.)

Further, plaintiff did not have counsel to conduct follow up questions. Where a plaintiff is unrepresented, the ALJ must be especially diligent. The ALJ did not adequately develop the hearing record in this case. Furthermore, because plaintiff's obesity must be considered on remand, the hearing record should be developed in this regard also.

CONCLUSION

If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp. 1273, 1277-78 (C.D.Cal. 1996). The court concludes, as did Barbato, that this case should be remanded for further administrative proceedings to enable the ALJ to obtain a more complete record, and to avoid the possibility of an inequitable result. Nothing the court has stated herein should be taken as an opinion that plaintiff is, in fact, unable to work at any level.

In sum, the court finds the ALJ's assessment is not fully supported by substantial evidence in the record or based on the proper legal standards. Accordingly, plaintiff's Motion for Remand or Summary Judgment is GRANTED IN PART, the Commissioner's Cross Motion for

Summary Judgment is DENIED, and the Clerk is directed to enter Judgment for the plaintiff. This matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. §405(g) for further findings in accordance with this order.

DATED: 11/3/05

/s/ Gregory G. Hollows

_____
GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Gibson1776.ss.wpd